UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JERRELL MILLER,

                                                Plaintiff,

    vs.                                                                  9:05-CV-649
                                                                         (LEK/GJD)

LIEUTENANT COVEY,

                                                Defendant.
_____

JERRELL MILLER, Plaintiff pro se
ROGER W. KINSEY, Asst. Attorney General for Defendant

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This matter has been referred to the undersigned for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

      In this civil rights complaint, plaintiff alleges that defendant violated plaintiff's right to due process in connection with a Tier II disciplinary hearing held against plaintiff on August 7, 2002. (Dkt. No. 1). Plaintiff also alleges that he was subjected to cruel and unusual punishment due to his placement in the Special Housing Unit. (SHU). Plaintiff seeks substantial monetary relief.

      Presently before the court is defendant's motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 17). Plaintiff has not responded to the motion. For the following reasons, this court agrees with defendant and will recommend dismissal of the complaint.

## DISCUSSION

1. **Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990)(citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted). However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

2. **Facts**

In his complaint, plaintiff states that he received a Tier II misbehavior report on August 4, 2002 for violations of Department of Correctional Services (DOCS) Rules 109.10 (out of place) and 181.10 (hearing disposition). Complaint p.6. Plaintiff states that the disciplinary hearing for these violations was held on August 7, 2002, with

defendant Covey presiding as hearing officer. *Id.* Plaintiff states that defendant Covey found plaintiff guilty of the misbehavior and imposed 60 days of confinement in SHU. Plaintiff claims that his confinement for 60 days in SHU was "unlawful or otherwise illegal" because the maximum period of confinement after a Tier II hearing is only 30 days.

In plaintiff's "Causes of Action", plaintiff states that defendant Covey violated plaintiff's right to "substantive" and "procedural" due process. Complaint at p.7 (First and Second Causes of Action). Plaintiff also claims that defendant violated plaintiff's rights under the Eighth Amendment because his excessive confinement was an "atypical and significant" hardship. *Id.* (Third Cause of Action).

3. **Exhaustion of Administrative Remedies**

Defendant argues that plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement applies to ***all inmate suits about prison life***, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004). The Supreme Court has recently held, agreeing with the Second Circuit, that the exhaustion requirement is an ***affirmative defense***, not a jurisdictional prerequisite. *Jones v. Bock*, 127 S. Ct. 910, 921 (2007); *Giano v. Goord*, 380 F.3d at 675-76. The Second Circuit has also held that there are instances in which the exhaustion requirement may either be waived or excused. *Id.* at 675. (citations omitted).

Additionally, as with other affirmative defenses, the defendant has the burden of

proof to show that plaintiff failed to exhaust his administrative remedies. *McCoy v. Goord*, 255 F. Supp. 2d 233, 247-48 (S.D.N.Y. 2003). Where questions of fact exist as to exhaustion, summary judgment is not appropriate. *Pendergrass v. Corrections Officers*, 01-CV-243A, 2004 U.S. Dist. LEXIS 28224, *6-7 (W.D.N.Y. Sept. 1, 2004). At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement and specifying various instances in which the requirement could be waived or excused. *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004)(remanding case to determine if defendant's alleged threats constituted "special circumstances" justified plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)(whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004)(complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

Pursuant to these cases, the Second Circuit has developed a "three part inquiry" to determine whether an inmate fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure

to comply with the exhaustion requirement. *Id.*

The court notes that the Supreme Court's decision in *Woodford v. Ngo*, 126 S. Ct. 2378 (2006) may have changed the law regarding possible exceptions to the exhaustion requirement. In *Woodford*, the Supreme Court held that the PLRA's exhaustion requirement mandates "proper" exhaustion of administrative remedies. In *Woodford*, the plaintiff filed a grievance that was rejected as "untimely." *Id.* at 2384. Woodford appealed the procedural denial through the administrative process, and "technically" exhausted his administrative remedies because there were no administrative remedies "available" to him. *Id.* However, the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Id.* at 2387. "Proper" exhaustion means that the inmate must complete the administrative review process ***in accordance with the applicable procedural rules***, including deadlines, as a prerequisite to bringing suit in federal court. *See id.* at 2385-93 (emphasis added).

It is unclear whether *Woodford* has overruled any decisions that recognize "exceptions" to the exhaustion requirement. In fact, based upon the concurring opinion in *Woodford*, it appears that these decisions have ***not*** been overruled in that respect. In that concurring opinion, Justice Breyer specifically noted that two circuits, the **Second** Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 126 S. Ct. at 2393 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*,

5

380 F.3d 670, 677 (2d Cir. 2004))(Breyer, J. concurring).  Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a ***traditional exception that the statute implicitly incorporates***." *Id.* (emphasis added).

The Second Circuit has not specifically considered the effect that *Woodford* may have had on *Giano-Hemphill* line of cases.  However, in *Ruggiero v. County of Orange*, 467 F.3d 170, 175-76 (2d Cir. 2006), the Second Circuit stated that it did not need to determine what effect *Woodford* has upon the Second Circuit case law in the exhaustion area because in *Ruggiero*, the court found that plaintiff would not have prevailed even assuming the continued validity of the ability to "excuse" non-exhaustion.  In *Sloane v. Mazzuca*, the court stated that it would follow the "current" law in the Second Circuit until the Second Circuit specifically addressed the issue. *Sloane v. Mazzuca*, 04-CV-8266, 2006 U.S. Dist. LEXIS 79817, *19-20 (S.D.N.Y. Oct. 31, 2006)(citation omitted).

The Supreme Court cited *Woodford* in *Jones v. Bock*, explaining that the holding in *Woodford* only imposed a requirement that in order to properly exhaust administrative remedies, the inmate must "'complete the administrative review process in accordance with the applicable procedural rules.'" *Jones*, 127 S. Ct. at 922 (citing *Woodford*, 126 S. Ct. at 2384).  These rules are defined by the prison grievance process itself, and not by the PLRA. *Id.*  In *Jones*, the Court ultimately held that exhaustion was not *per se* inadequate simply because a defendant that was later named in the civil rights complaint was not named in the grievance. *Id.* at 923.

6

In this case, plaintiff is complaining about a disciplinary hearing. He claims that defendant Covey violated plaintiff's constitutional rights when he imposed a sentence of sixty days in SHU following a Tier II hearing that was held on August 7, 2002.

In support of his motion for summary judgment, defendant has submitted the affidavit of Donald Selsky, the director of Special Housing and Inmate Disciplinary Hearings for DOCS. Selsky Aff. ¶ 1. Mr. Selsky explains that there are three levels of inmate disciplinary hearings: Tier I; Tier II; and Tier III.[1] Selsky Aff. ¶¶ 5-7, 9 (citing N.Y. COMP. CODES R. & REGS.(NYCRR), tit. 7, §§ 250, 252.5, 253.7, 254.7). Mr. Selsky also explains in his affidavit that each disciplinary tier addresses violations in order of seriousness, with Tier I hearings being reserved for the least serious infractions, which can only be punished by loss of privileges; Tier II hearings addressing more serious infractions, for which the punishment can include up to 30 days confinement; and Tier III hearings being reserved for the most serious infractions, for which inmates may be sentenced to unlimited periods of SHU, together with a forfeiture of "good time" credits. *Id.*

The results of all levels of disciplinary hearings may be appealed. Appeals of Tier II dispositions must be made to the Superintendent of the facility. Selsky Aff. ¶ 8. (citing N.Y.C.R.R. § 253.8). Appeals of Tier III dispositions must be made within 30

---

[1] The court would point out that Tier I hearings are also referred to in the regulations as "Violation Hearings." 7 N.Y.C.R.R. Part 252. Tier II hearings are also referred to as "Disciplinary Hearings." 7 N.Y.C.R.R. Part 253. Tier III hearings are also referred to as "Superintendent's Hearings." 7 N.Y.C.R.R. Part 254.

days to the Commissioner, who has designated the Special Housing Unit/Inmate Disciplinary Programs department to review those appeals. Selsky Aff. ¶ 10 (citing 7 N.Y.C.R.R. § 254.8).

Defendant has also submitted the affidavit of Carole Greene, Inmate Records Coordinator II for DOCS, assigned to Great Meadow Correctional Facility. Greene Aff.  In Ms. Greene's affidavit, she also explains the three-tier procedure for disciplinary hearings, together with the appeal procedures for Tier II hearing dispositions. Greene Aff. ¶¶ 3-6.  Ms. Greene states that plaintiff in this case has ***never filed any administrative appeal of his August 7, 2002 hearing disposition***, wherein he was found guilty of being out of place and non-compliance with a hearing disposition.[2]  Since he has never filed an appeal of the hearing disposition that he now challenges, he has failed to exhaust his available administrative remedies.

The court must then determine whether there are any exceptions to the exhaustion requirement in plaintiff's case.  In his complaint, plaintiff admits that he did not file any "grievances" with respect to this problem because he was "ignorant towards [sic] life, mentally ill with suicidal thoughts and could barely read and write." Complaint at p.3.  Plaintiff also stated that he did not even have a chance to find out that a grievance procedure existed. *Id.*  He also states in the complaint, that he ***chose*** not to complain about the facts that form the basis for this complaint because he was under heavy psychotic medication in SHU that caused him to sleep constantly.

---

[2] Plaintiff pled guilty to both charges. Covey Aff. Ex. F at pp.1-2 (8/7/02 Hearing Transcript).

8

The court must point out that although both are procedural vehicles for inmate complaints, *grievances* that are addressed to general aspects of prison life are different than *appeals* from disciplinary infractions. New York State provides inmates with a grievance procedure to follow by which inmates may file complaints and appeal adverse decisions. N.Y. CORRECT. LAW § 139; N.Y. COMP. CODES R. & REGS. tit. 7 §§ 701.1 *et seq.* (NYCRR). While an inmate must affirmatively seek to file a grievance and appeal the denial of that grievance through the proper procedures, an inmate is specifically told of his rights to appeal the adverse ruling *at a disciplinary hearing*. The inmate is also informed to whom the appeal must be addressed and how much time he has to appeal. Plaintiff in this case was *given all of that information, verbally, and in writing, at the conclusion of the August 7, 2002 disciplinary hearing*. Covey Aff. Exs. F & G (8/7/02 Hearing Transcript and Disposition). Plaintiff did not have to "find out" whether a grievance procedure existed because the exhaustion of administrative remedies would have been complete if plaintiff had simply appealed the disciplinary hearing result as explained to him by the hearing officer. Covey Aff. Ex. F at p.6.

Plaintiff was also deposed in this action. Defendant has submitted portions of the plaintiff's deposition as Defendant's Ex. A. Plaintiff clearly stated during his deposition that he "should have" appealed the Tier hearing, but he "didn't want to." Ex. A at p.2 (Deposition Transcript page 14). Plaintiff then cryptically stated "stay in the box is the whole idea or get assaulted again." *Id.* It is unclear to what plaintiff is referring, but it is clear that he made a *conscious decision* not to appeal the hearing

9

disposition, and that he wished to remain in SHU for whatever reason. *Id.*

The court would also point out that plaintiff did not give all of the facts surrounding his alleged "60 day" sentence to SHU after a Tier II hearing. It is clear from the exhibits submitted by defendant that the sentence that plaintiff received as a result of the infractions handled in the Tier II hearing was only 30 days keeplock. Covey Aff. Ex. G. However, plaintiff had a previous ***Tier III*** disciplinary hearing on August 1, 2002, after which he was found guilty of committing an unhygienic act as well as damaging property.[3] Covey Aff. Ex. B. Plaintiff pled guilty to the unhygienic act. Covey Aff. Ex. C at p.2. He was sentenced to 30 days in SHU, but that sentence was "suspended" for a period of three months. Covey Aff. Ex. C (8/1/02 Hearing Transcript at p.7). The 30 day "suspended" sentence was added to the 30 day keeplock sentence imposed by defendant Covey after the Tier II hearing, bringing plaintiff's total confinement to 60 days. Covey Aff. Ex. G (8/7/02 Hearing Dispostion).

At the August 1, 2002 hearing, the hearing officer (Captain Padyk) explained the meaning of a "suspended" sentence. Covey Aff. Ex. C at p.9. Captain Padyk told plaintiff that he would have "thirty days over [his] head for a period of three months." *Id.* This meant that if plaintiff had another misbehavior report within three months, "[t]hat thirty days can be picked up and then added [sic] whatever else you did at that

---

[3] The misbehavior that resulted in the August 1, 2002 hearing was committed at Ulster Correctional Facility. Covey Aff. Ex. A (July 26, 2002 Misbehavior Report). The two hearings, however, were both conducted at Green Correctional Facility. Covey Aff. Exs. C & F (disciplinary hearing transcripts from 8/1/02 and 8/7/02).

time." *Id.* Captain Padyk also carefully explained how plaintiff could appeal the disposition if he chose to do so. *Id.* Plaintiff ***never appealed the August 1, 2002 disposition***. Selsky Aff.¶ 12.

Since plaintiff's August 4, 2002 disciplinary infraction, resulting in his August 7, 2002 disciplinary hearing was certainly within three months of the August 1, 2002 disciplinary hearing, the suspended sentence from August 1, 2002 Tier III hearing was justifiably added to the sentence of 30 days keeplock from the August 7, 2002 hearing. Captain Padyk explained this to plaintiff at the end of the August 1, 2002 hearing. This was only four days before plaintiff committed the August 4, 2002 infraction. There was little time for plaintiff to have forgotten Captain Padyk's admonition.

Although plaintiff states in his complaint that he did not file a grievance or complain about the hearings because he was "ignorant towards life," plaintiff's deposition transcript shows just the opposite. He concedes that he understood the hearing officer's statement at the time of the August 1, 2002 Tier III hearing that if plaintiff got "another ticket" the suspended sentence "would be revoked." Ex. A at p.5 (Deposition Transcript page 22). Plaintiff then claims that after the August 7, 2002 Tier II hearing, he thought that the hearing officer should have either sentenced him to thirty days keeplock *or* imposed the suspended sentence of 30 days in SHU.

Although it is true that plaintiff ultimately served sixty days as the "result" of a Tier II hearing, the extra thirty days was imposed after a Tier III hearing and plaintiff was well aware after that Tier III hearing that if he committed any more misbehavior within three months, the suspended sentence of thirty days would be added to any

11

other sentence he received.[4]  Thus, it is clear that plaintiff had available remedies to challenge his sentence, no one prevented him from utilizing these methods of appeal, and there are no "special circumstances" that would justify plaintiff's failure to exhaust.

To the extent that the complaint appears to allege a separate Eighth Amendment violation for sixty days confinement in SHU, plaintiff never filed a grievance regarding the conditions in SHU and would not have exhausted his administrative remedies as to an Eighth Amendment claim.  Additionally a review of plaintiff's deposition shows that he was only claiming that he received cruel and unusual punishment because the sentence was excessive, not because of any "conditions" in SHU.   Plaintiff stated that although he was placed in a double room with another inmate, they never had any problems, and plaintiff was afforded all the items that he needed. Defendant's Ex. A at 15-17 (Deposition Transcript at 32-34).

In fact, when defense counsel asked plaintiff if he ever filed a grievance about the conditions in SHU, plaintiff stated that "[i]t wasn't horrible, no." *Id*. at 17, Deposition Transcript at 34).  Thus, to the extent that plaintiff's complaint appears to allege a separate Eighth Amendment claim, it is also not exhausted, and there is no

---

[4] The court notes that although the hearing disposition states that 30 days was keeplock, and 30 days was SHU time, plaintiff apparently spent the entire sentence in SHU.  Keeplock is generally confinement to an inmate's own cell for a period of time. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).  The SHU is a separate housing unit.  However, the regulations provide that the sentence after a Tier II hearing may be a maximum of 30 days confinement to a cell or room continuously or to a Special Housing Unit under keeplock confinement. 7 N.Y.C.R.R. § 253.7(a)(iii).  Defendant Covey's affidavit in this case states that he has no control over *where* the inmate serves his sentence after a Tier Hearing disposition. Covey Aff. ¶ 23.  Thus, the fact that plaintiff spent the entire 60 days in SHU does not change this court's findings.

reason to excuse the failure to exhaust.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 17) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 7, 2007

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　Hon. Gustave J. DiBianco
　　　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge